UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA S. EVANS, in her capacity as personal representative of the Estate of Gerald E. Hendricks, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY NATIONAL LIFE INSURANCE COMPANY, and THE RELIABLE LIFE INSURANCE COMPANY, <br><br> Defendants. | Case No. 13-CV-0390-CVE-PJC |

# OPINION AND ORDER

Now before the Court is the motion for summary judgment of defendant Liberty National Life Insurance Company (Liberty). Dkt. # 60. Liberty argues that summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate as to plaintiff's claims for breach of contract and insurer bad faith because Liberty had no contractual obligation to breach following a reinsurance agreement with another insurer. Id. at 1. Plaintiff responds that summary judgment is inappropriate because much of Liberty's evidence is inadmissible and because Liberty could not transfer its contractual obligation to another insurer. Dkt. # 62, at 1-2. Liberty has filed a reply. Dkt. # 63.

**I.**

On June 28, 1976, Gerald E. Hendricks[1] purchased from Liberty an insurance policy (the policy) designed to pay the expenses of cancer treatment. Dkt. # 60-1, at 3. The policy was issued from Liberty's office in Tulsa, Oklahoma. Id. On May 18, 1984, Liberty entered into a Reinsurance and Assumption Agreement (the agreement) with United Insurance Company of America (United). Dkt. # 60-3, at 1. As part of the agreement, Liberty ceded to United many of the insurance policies issued by its Oklahoma offices. Id. The policy was among those ceded. Dkt. # 63-1, at 1-2, 15. United immediately reinsured all of the ceded policies. Dkt. # 60-3, at 1-3, 10-11. The agreement specifies that "United covenants and agrees to assume and carry out all the contractual terms, conditions and provisions contained in" the policies being ceded. Id. at 3. It further states that "United assumes the obligations of the liabilities for losses, claims, demands, and causes of action, of whatever kind and character, arising out of the solicitation, sale, issuance, servicing, payment of benefits and losses, or any other obligation asserted against, in connection with, or arising out of" the ceded policies. Id. at 10. Liberty agreed to indemnify United for certain claims and judgments, but its obligation to do so ended two years after the agreement's effective date. Id. The agreement also required United to deliver to policyholders a certificate of assumption reflecting the change. Id. at 11. The agreement provided provisional language for the certificate, but it noted that the "certificate shall be, if necessary, in form acceptable to the Commissioner of Insurance of Oklahoma or his delegate, and shall be in substantially the following language, with such changes as may be

---

[1] Hendricks was the initial named plaintiff, but he died on May 27, 2013. Dkt. # 20, at 1. Donna S. Evans, the personal representative of Hendricks' estate, was substituted as the named plaintiff. Dkt. # 22.

required by such supervisory official." Id. The effective date of the agreement was June 4, 1984.[2] Id. at 7.

At some point, Reliable succeeded to United's interest in the policy. Dkt. # 60-2, at 1; see also Dkt. # 60-5, at 2; Dkt. # 60-6, at 1. Hendricks was diagnosed with cancer and received treatment. Dkt. # 62-1, at 1. Hendricks presented Reliable with a claim under the policy, and Reliable paid a portion of the claim. Dkt. # 62-1, at 1. The amount paid did not satisfy all of Hendricks' outstanding medical bills. Id. Hendricks and plaintiff made repeated attempts to claim further benefits under the policy, but these attempts were unsuccessful. Dkt. # 62-1, at 1.

Plaintiff initially filed this action in state court, Dkt. # 2-2, and Reliable timely removed to this Court. Dkt. # 29, see also Dkt. # 2. During the discovery process, plaintiff filed a motion to compel discovery that sought, inter alia, the name, address, type of policy owned, and claim disposition for each individual whose insurance policy was ceded as part of the agreement. See Dkt. # 40. The magistrate judge denied plaintiff's motion as beyond the scope of discovery, reasoning that the complaint referenced only the policy, not all existing policies, and did not allege a broad

---

[2] Although not addressed by the parties, the Court notes that both parties simply assume that the agreement became effective. Oklahoma statutes allow domestic insurers to reinsure all or a large portion of their business, but any reinsurance agreement is subject to the approval of the Insurance Commissioner of Oklahoma. OKLA. STAT. tit. 36, §§ 2132(B), 2134(B). Oklahoma statute also allows a foreign insurer to become a domestic insurer. OKLA. STAT. tit. 36, § 606.1(A). In its answer, Liberty admits that it is a foreign insurer. Dkt. # 2-14, at 2. Reliable does the same. Dkt. # 2-11, at 2. The agreement likewise states that both Liberty and United were incorporated outside Oklahoma. Dkt. # 60-3, at 1. However, in the event that Liberty or United, though incorporated outside the state, chose to domesticate itself in Oklahoma prior to the agreement, it would have been bound by either § 2132(B) or § 2134(B). In that situation, the agreement would not be effective until approved by the Insurance Commissioner of Oklahoma. No evidence has been presented as to the parties' submission of the agreement or the certificate of assumption to the Insurance Commissioner, nor of the Insurance Commissioner's response. Nor was evidence presented that a certificate of assumption was ever sent.

business practice on defendants' parts that would warrant discovery beyond the policy. Dkt. # 53, at 3-4. Plaintiff objected to the magistrate judge's order, Dkt. # 54; this Court upheld the magistrate judge's order and denied plaintiff's objection. Dkt. # 57. Liberty now seeks summary judgment as to both of plaintiff's claims against it. Dkt. # 60.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Liberty seeks summary judgment as to plaintiff's claim for breach of contract. Dkt. # 60, at 5. Under Oklahoma law, "[a] breach of contract is a material failure of performance of a duty arising under or imposed by agreement." Lewis v. Farmers Ins. Co., 1983 OK 100, ¶ 5, 681 P.2d 67, 69. The three elements of a breach of contract claim are "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843. Liberty contends that, as a result of the agreement, it no longer has a contractual relationship with plaintiff. Dkt. # 60, at 5. "A right to sue for breach of contract, presupposes the existence of a contract." Steelman v. Okla. Police Pension & Ret. Sys., 2005 OK CIV APP 91, ¶ 22, 128 P.3d 1090, 1096. Plaintiff argues that summary judgment is inappropriate because much of Liberty's evidence is inadmissible or cannot be considered as part of Liberty's motion for summary judgment. Dkt. # 62, at 5-8. Plaintiff also asserts that, under Oklahoma law, Liberty could not transfer its obligation to pay benefits under the policy to another insurer, and as such it should remain liable. Id. at 8-11.

A. Admissibility of Liberty's Evidence

Before addressing the merits of Liberty's argument, the Court must first determine if, as plaintiff contends, some of Liberty's evidence is inadmissible or cannot be considered. Rule 56 requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion

5

by: . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A)-(B). While this evidence need not take the form of evidence admissible at trial, "the content or substance of the evidence must be admissible." Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995) (citing Winskunas v. Birnbaum, 23 F.3d 1264, 1267-68 (7th Cir. 1994)); see also FED. R. CIV. P. 56(c)(2). If the moving party fails to present sufficient evidence in support of its motion for summary judgment, then the motion must be denied. Murray v. City of Tahlequah, Okla., 312 F.3d 1196, 1200 (10th Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)). Plaintiff argues that the following evidence is inadmissible or cannot support Liberty's motion: Reliable's admissions in response to Liberty's requests for admissions; Reliable's admissions in its answer to plaintiff's complaint; and the agreement. Dkt. # 62, at 6-7.

### 1. Reliable's Admissions in Response to Liberty's Requests for Admissions

Plaintiff contends that Liberty cannot cite to Reliable's admissions to Liberty because "the requests for admissions were not directed to Plaintiff, nor responded to by Plaintiff." Dkt. # 62, at 6. In support, plaintiff cites United States v. Wheeler, 161 F. Supp. 193, 198 (W.D. Ark. 1958), where the court ruled that plaintiff's requests for admission from one defendant were not binding on another defendant. However, Wheeler--a decision by a district court in another circuit--cited no authority. Wheeler, 161 F. Supp. at 198. Rule 56 requires a party to support its assertions of fact by "citing to particular parts of materials in the record, including . . . admissions . . . ." FED. R. CIV. P. 56(c)(1)(A). Rule 36, which governs requests for admissions, states that "[a] party may serve on any other party a written request to admit . . . the truth of any matters" within the scope of discovery. FED. R. CIV. P. 36(a). The rule is written only in terms of parties, and it does not restrict co-parties

6

from requesting admissions from one another. The rule further states that "[a] matter admitted under this rule is conclusively established" unless the court permits amendment or withdrawal. FED. R. CIV. P. 36(b). Liberty made a written request for admissions to Reliable, and Reliable responded. Dkt. # 60-2. Reliable has not asked this Court to permit it to amend or withdraw its admissions to Liberty. Under the Federal Rules of Civil Procedure, the matters in Reliable's admissions are "conclusively established" and may support Liberty's motion for summary judgment.[3]

### 2. Reliable's Admissions in Its Answer to Plaintiff's Complaint

Plaintiff also asserts that the Court cannot consider Reliable's admissions in its answer to the complaint because the answer is unsworn, because it does not meet the requirements for an affidavit under Rule 56, and because it is not an admission by plaintiff. Dkt. # 62, at 7. However, plaintiff cites no authority for her arguments, and the Court could find none. Rule 11 does not require a party to swear to a pleading before filing it; instead, the rule requires that "[e]very pleading . . . be signed by at least one attorney of record in the attorney's name . . . ." FED. R. CIV. P. 11(a). Reliable's answer is signed by one of its counsel of record, see Dkt. # 60-6, at 5; thus, the answer is not deficient because it is unsworn.[4] It is true that Reliable's answer does not meet the requirements for

---

[3] Plaintiff states that "the very idea that Defendant Reliable can admit something to Defendant Liberty National and so bind Plaintiff smacks of a Mary Carter agreement and collusion, and is an unconstitutional denial of due process." Dkt. # 62, at 6. These vague allegations are without merit. Liberty and Reliable are separate entities with separate counsel. See Dkt. ## 7, 10. To date, Liberty and Reliable have filed separate motions and responses, even when their arguments parallel. Compare Dkt. # 44 (Liberty's response to plaintiff's motion to compel discovery), with Dkt. # 49 (Reliable's response to plaintiff's motion to compel discovery). The Court can find no reason to believe that the defendants are acting in collusion with one another simply because the result of their actions may be detrimental to plaintiff.

[4] The signing counsel has since withdrawn from the case. Dkt. # 58.

an affidavit under Rule 56, as it was neither "made on personal knowledge" nor "show[ed] that the affiant or declarant is competent to testify on the matters stated." See FED. R. CIV. P. 56(c)(4). However, the admissions in Reliable's answer need not be an affidavit to be admissible as admissions. Rule 8 requires the party responding to a pleading to "admit or deny the allegations asserted against it by an opposing party." FED. R. CIV. P. 8(b)(1)(B). The Tenth Circuit has interpreted this rule to mean that any allegation not denied is admitted. See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver, 628 F.2d 1289, 1293 (10th Cir. 1980). Admissions can be considered as part of a motion for summary judgment. FED. R. CIV. P. 56(c)(1)(A). Rule 36 does not require admissions by a party to meet the standards of an affidavit. See FED. R. CIV. P. 36(a). The fact that the answer does not meet the requirements for an affidavit, therefore, does not preclude the Court from considering Reliable's admissions in its answer as admissions. Further, as discussed above, there is no requirement in Rule 36 or Rule 56 that the admissions relied on in a motion for summary judgment be limited to admissions by an adversary. See FED. R. CIV. P. 36(a). Thus, the fact that the admissions were made by Reliable rather than plaintiff does not prevent the Court from considering them. As the Court can find no reason under the Federal Rules of Civil Procedure not to consider Reliable's admissions in its answer, the Court will consider them. See FED. R. CIV. P. 56(c)(1).

### 3. The Agreement

Finally, plaintiff argues that the agreement is inadmissible or cannot be considered on summary judgment because it is not authenticated, because it lacks a direct connection to the policy, and because it is beyond the scope of discovery. Rule 56 requires that the materials cited in support of a factual assertion "be presented in a form that would be admissible in evidence." FED. R. CIV.

8

P. 56(c)(2); see also Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." (quoting Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995))). As amended in 2010, Rule 56 gives the non-moving party the opportunity to object to the admissibility of evidence after the evidence has been submitted. See FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").[5] Although the Tenth Circuit has yet to address the procedure that district courts should follow when a party objects to the admissibility of evidence under Rule 56(c)(2), one district court has reviewed Tenth Circuit precedent in light of the amended Rule 56 and concluded the following: "If an objection is made to an exhibit, the proponent of the exhibit has two options. One possibility is to correct the problem leading to the objection. . . . In the alternative, the proponent can explain how the contents of the exhibit will be submitted at trial so that the information is admissible." Mitchell v. Zia Park, LLC, 842 F. Supp. 2d 1316, 1321 (D.N.M. 2012). This procedure accords with that used by district courts outside the Tenth Circuit. See, e.g., Foreword Magazine, Inc. v. Overdrive, Inc., No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011); EEOC v. Mike Hooks, Inc., No. 2:09 CV 477, 2011 WL 1807369, at *6-*7 (W.D. La. May 11, 2011). The Court finds the reasoning of the district court in Mitchell persuasive, and it will follow the same procedure to determine if the agreement is admissible.

---

[5] Prior to 2010, Rule 56 did not include a subdivision analogous to the current Rule 56(c) and was silent as to the admissibility of evidence on a motion for summary judgment. See FED. R. CIV. P. 56 (2009). The advisory committee notes to Rule 56 state that an objection under Rule 56(c)(2) "functions much as an objection at trial, adjusted for the pretrial setting." FED. R. CIV. P. 56 advisory committee notes (2010 amend.).

9

Plaintiff first objects to the agreement's admissibility on the ground that it is not authenticated. Dkt. # 62, at 6; see FED. R. EVID. 901; see also Law Co. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1170 (10th Cir. 2009). As plaintiff has objected to the authenticity of the agreement, the burden is on Liberty to authenticate the agreement. Mitchell, 842 F. Supp. 2d at 1321. Federal Rule of Evidence 901 states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). Among the examples provided for satisfying Rule 901(a) is the "[t]estimony of a [w]itness with [k]nowledge." FED. R. EVID. 901(b)(1). At summary judgment, such testimony may come in the form of depositions or affidavits. See FED. R. CIV. P. 56(c)(1)(A), see also 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2722 (3d ed. 2002). Liberty attached to its reply the affidavit of David L. Smith III, Vice President and Associate Counsel for Liberty (the affidavit), in order to authenticate the agreement. Dkt. # 63-1.[6] The affidavit states that the copy of the agreement that Liberty attached to its motion for summary judgment (Dkt. # 60-3) is "a true and correct copy of the Reinsurance and Assumption Agreement from Liberty's books and records." Dkt. # 63-1, at 1. The Court finds that Liberty has met its burden under Rule 901(a) to produce evidence that the agreement is authentic, and plaintiff's objection to the agreement on that basis is overruled.

Plaintiff also contends that Liberty cannot cite to the agreement because it does not refer specifically to the policy. Plaintiff states that "there is no nexus tying [the agreement and the policy]

---

[6] Rule 56 requires that affidavits submitted in support of a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). The affidavit satisfies the Rule 56 requirements.

together." Dkt. # 62, at 6. The Court interprets plaintiff's argument as an objection to the agreement's admissibility on the ground of relevance. See FED. R. CIV. P. 56(c)(2). As discussed above, the materials cited in support of a factual assertion must "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Irrelevant evidence is not admissible." FED. R. EVID. 402. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." FED. R. EVID. 401. As with the issue of authenticity, plaintiff's objection places the burden on Liberty to show the agreement's relevance. See Mitchell, 842 F. Supp. 2d at 1321. Liberty argues that the affidavit and attached documents demonstrate the relevance of the agreement. Dkt. # 63, at 4. The affidavit states that the policy was ceded as part of the agreement. Dkt. # 63-1, at 1. Attached to the affidavit is a record showing the policy, id. at 15, and the affidavit states that the record was one of those compiled to fulfill Liberty's duty under the agreement to provide United with a list of all claims being ceded. Id. at 1-2.[7] Based on the affidavit and the attached record, the Court finds the agreement relevant under Rule 401. Plaintiff's objection to the agreement as irrelevant is overruled.

Finally, plaintiff argues that Liberty cannot cite the agreement in support of its motion because the agreement is beyond the scope of discovery. Plaintiff points to the magistrate judge's order and this Court's previous opinion and order for the argument that evidence about the transfer of the policies, including the agreement, is outside the scope of discovery. Dkt. # 62, at 7. However, plaintiff's argument misinterprets the previous orders. The crux of the magistrate judge's order was

---

[7]  The agreement required "Liberty National [to] prepare in duplicate, lists or tapes . . . of the policies ceded and transferred by Liberty National and assumed and reinsured by United in accordance with this Agreement." Dkt. # 60-3, at 6.

11

that plaintiff's discovery requests, which encompassed the personal information of all Oklahoma policyholders at the time of the agreement, were overly broad in relation to the complaint, which alleged the failure to pay claims on the policy only. See Dkt. # 53, at 3-4. However, at no point did the magistrate judge or this Court prevent plaintiff from seeking discovery about the policy itself; that information fits squarely within the scope of discovery under Rule 26(b).[8] The agreement, as part of the policy's history, is well within the scope of discovery, and the Court will not exclude it from consideration because the scope of discovery does not also include information about other Liberty policyholders. Because the evidence shows the agreement to be authentic, relevant, and within the scope of discovery, the Court will consider it as part of Liberty's motion for summary judgment.

B. Liberty's Liability Under the Policy

Liberty argues that summary judgment is appropriate because the agreement was an assumption reinsurance contract that relieved Liberty of any liability for claims under the policy. Dkt. # 60, at 5. Plaintiff responds that, even if Liberty could transfer its rights under the policy to another insurer as part of a reinsurance contract, it would remain liable. Dkt. # 62, at 8.[9] A reinsurance contract is "a contract of indemnity one insurer makes with another to protect the first insurer from a risk it has already assumed." GRAYDON S. STARING & DEAN HANSELL, LAW OF REINSURANCE § 1:1 (2014) [hereinafter LAW OF REINSURANCE] (quoting Pioneer Life Ins. Co. v.

---

[8] Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1).

[9] As the Court finds that Liberty has failed to provide sufficient evidence to support its motion for summary judgment, the Court does not address plaintiff's arguments.

Alliance Life Ins. Co., 30 N.E.2d 66, 73 (Ill. 1940)). Courts generally distinguish assumption reinsurance, which "is treated as a sale of the policies," from indemnity reinsurance, which "is the purchase of insurance protection from the reinsure[r]." Oxford Life Ins. Co. v. United States, 790 F.2d 1370, 1376 (9th Cir. 1986) (citing Beneficial Life Ins. Co. v. Comm'r, 79 T.C. 627, 645-46 (1982)). In Colonial American Life Insurance Co. v. Commissioner, 491 U.S. 244, 247 (1989), the Supreme Court clarified the liability of the parties following a reinsurance contract:

> In the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities and its responsibility to maintain required reserves against potential claims. The assumption reinsurer thereafter receives all premiums directly and becomes directly liable to the holders of the policies it has reinsured.
> In indemnity reinsurance . . ., it is the ceding company that remains directly liable to its policyholders, and that continues to pay claims and collect premiums. The indemnity reinsurer assumes no direct liability to the policyholders. Instead, it agrees to indemnify, or reimburse, the ceding company for a specified percentage of the claims and expenses attributable to the risks that have been reinsured, and the ceding company turns over to it a like percentage of the premiums generated by the insurance of those risks.

Id. While assumption reinsurance transfers direct liability under the policy, the ceding company remains liable unless there has been a novation substituting the reinsurer for the ceding company. LAW OF REINSURANCE § 1:5 ("In many instances an insurer has transferred all or a block of its assets and liabilities to another insurer, which undertakes thereafter to be directly responsible to the insureds for their claims. Sometimes there is a novation, in which case the first insurer passes out of the picture, but otherwise both are liable."); see also APPLEMAN, INSURANCE LAW AND PRACTICE § 7741 (2d ed. 1996). The agreement places Liberty in the position of ceding company and United in the position of reinsurer. Dkt. # 60-3, at 1. Thus, the Court may grant summary judgment in Liberty's favor only if the agreement created assumption reinsurance and there was an effective novation.

The Tenth Circuit has not provided a method to distinguish between assumption reinsurance and indemnity reinsurance. The Second Circuit, relying on the Supreme Court's language in Colonial American Life, has held that a reinsurer's assumption of the ceding company's "net" liabilities, as opposed to "all" liabilities, was not assumption reinsurance. Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co., 555 F.3d 87, 90 (2d Cir. 2009); accord Canal Ins. Co. v. Montello, Inc., 826 F. Supp. 2d 1264, 1270-71 (N.D. Okla. 2011). The implication of Jurupa is that the reinsurer must assume all liability for the ceded policies, without restrictions, for the contract to be one for assumption reinsurance. See Canal Ins. Co., 826 F. Supp. 2d at 1271 ("[B]ecause NICO has not assumed all of CNA's liabilities, the reinsurance contract does not create assumption reinsurance, and NICO is not directly liable to Montello under a theory of assumption insurance."). As to liability, the agreement provides the following:

> United assumes the obligations of the liabilities for losses, claims, demands, actions and causes of action, of whatever kind and character, arising out of the solicitation, sale, issuance, servicing, payment of benefits and losses, or any other obligation asserted against, in connection with, or arising out of the policies of insurance ceded and assumed hereunder.

Dkt. # 60-3, at 10. Under this provision, United assumes all liabilities for the policies, without any of the restrictive language found in Jurupa and Canal.[10] None of the other provisions of the agreement diminishes the liability that United assumed under the provision above. Because the agreement states that liability for the ceded policies would pass to United without any apparent restriction, the Court finds that the agreement was an assumption reinsurance contract. As the

---

[10] Liberty did agree to indemnify United for a certain amount of damages resulting from any judgment or settlement related to the ceded policies. Dkt. # 60-3, at 10. However, a requirement to indemnify would not be a restriction on United's liability, as indemnity is the "duty to make good any . . . liability incurred by another." BLACK'S LAW DICTIONARY (9th ed. 2009). For Liberty to indemnify United would first require United to have liability.

Supreme Court stated, "in the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy . . . and becomes directly liable to the holders of the policies it has reinsured." Colonial Am. Life Ins. Co., 491 U.S. at 247. Once the agreement became effective, United stepped into Liberty's shoes and became the entity directly liable for any claims under the policy.

However, Liberty would still retain some liability unless there was a novation of the insurance policy. LAW OF REINSURANCE § 1:5. A novation is "a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." RESTATEMENT (SECOND) OF CONTRACTS § 280 (1981). There are four elements to a novation: "(1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one." Williams v. Otis, 1932 OK 166, ¶ 10, 8 P.2d 728, 729. A novation may be shown both from "express words agreeing to the substitution" or "reasonably deduced from facts and circumstances put in proof in the case showing the conduct of the parties concerning the new or substituted contract." Id., ¶ 13, 8 P.2d at 729 (quoting Drumright State Bank v. Westerheide et al., 1926 OK 686, ¶ 0, 254 P. 80, 81).

Oklahoma courts have not addressed novation in the context of assumption reinsurance, and the rulings of other courts are not in complete accord on what evidence is sufficient to show agreement to a new contract and extinguishment of the old contract. In Mississippi Insurance Guaranty Association v. MS Casualty Insurance Co., 947 So.2d 865 (Miss. 2006), the Supreme Court of Mississippi found a novation where the reinsurer assumed liability for all claims, the policyholders received notice in the form of assumption certificates, the assumption certificate clearly stated that the reinsurer "is now the insurer of your policy and is responsible for paying all

claims due under your policy," and the policyholders paid their premiums to the new insurer. Id. at 871. Similarly, the Supreme Court of Wisconsin found that a policyholder's silence after receiving a certificate of assumption, coupled with the payment of fifteen premiums, constituted a novation. State Dep't of Pub. Welfare v. Cent. Standard Life Ins. Co., 120 N.W.2d 687, 692 (Wisc. 1963). By contrast, the Supreme Court of Minnesota has held that, under the "high standard of proof" required for a novation in that state, policyholders' inaction following receipt of a certificate of assumption informing them of the transfer and their right to object was not enough to prove a novation. Vetter v. Sec. Cont'l Ins. Co., 567 N.W.2d 516, 521-22 (Minn. 1997). The California Court of Appeal found that plaintiffs who needed continuous medical care did not consent to a novation through receipt of a certificate of assumption and subsequent payment of premiums because they lacked a meaningful opportunity to object to the transfer of their health insurance policy. Baer v. Assoc. Life Ins. Co., 248 Cal. Rptr. 236, 239-40 (Cal. Ct. App. 1988). In Vandeventer v. All American Life and Casualty Co., 101 S.W.3d 703 (Tex. App. 2003), the Court of Appeals of Texas held that there was no novation where the certificate of assumption not only did not state that it would release the original insurer but also stated that the payment of premiums did not serve as a release or waiver of rights. Id. at 718. And in Security Benefits Life Insurance Co. v. F.D.I.C., 804 F. Supp. 217 (D. Kan. 1992), the District Court for the District of Kansas did not find a novation under Kansas law where an annuity holder was not provided with clear notice that the ceding insurer had transferred its obligation to the reinsurer and would no longer be liable. Id. at 228-29.

The Court finds that Liberty has not submitted sufficient evidence to show that a novation occurred. In many of the cases cited above, the courts based their decision about the parties' agreement to a new contract on the language of the certificate of assumption and the policyholder's

16

actions after receiving notice. It is not challenged that the policy was in effect when Hendricks made his claim. The Court may reasonably infer that Hendricks made all required premium payments--for more than twenty years--to the insurer (United or Reliable) with direct liability for the policy. See Dkt. # 62-1, at 1. Hendricks therefore had notice of the transfer. However, Liberty failed to include in the record a copy of the certificate of assumption mailed to former Liberty policyholders following the agreement, or any evidence as to the succeeding liability of Reliable from United. Liberty also did not include an affidavit or any other evidence from the Insurance Commissioner of Oklahoma related to the Commissioner's acceptance of the agreement or the certificate of assumption.[11] Without additional evidence, the Court cannot say, as a matter of law, that Hendricks agreed to substitute United or Reliable for Liberty as the only entity liable under the policy and to extinguish the old contract. As such, Liberty has failed to show it "is entitled to judgment as a matter of law" on plaintiff's claim for breach of contract. FED. R. CIV. P. 56(a).[12] Liberty's motion for summary judgment is denied as to plaintiff's breach of contract claim.

---

[11] The agreement lays out provisional language for the certificate of assumption. Dkt. # 63-1, at 13. However, the agreement specifically states that the language in the agreement "shall be in substantially the following language, with such changes as may be required" by the Insurance Commissioner of Oklahoma. Id.

[12] The Court notes that, although summary judgment is not appropriate at this stage, there would be no detriment to plaintiff if Liberty were no longer a party to this case. ". . . Oklahoma law allows only one recovery to make a plaintiff whole." Kruchowski v. Weyerhaeuser Co., 2008 OK 105, ¶ 33, 202 P.3d 144, 153. Reliable has admitted that it is responsible for all contractual liabilities under the policy. Dkt. # 60-2, at 2. There has been no indication that Reliable is or will soon be insolvent. Thus, assuming plaintiff proves her case, any recovery would come from Reliable, not Liberty.

**IV.**

Liberty argues that summary judgment is also appropriate on plaintiff's claim that Liberty acted in bad faith. Liberty provides three bases for summary judgment: that plaintiff never presented Liberty with a claim; that plaintiff failed to allege any act by Liberty or its agents; and that the agreement, by extinguishing Liberty's liability under the policy, precludes a bad faith claim. Dkt. # 60, at 6-7. Plaintiff provides little opposition to these arguments in her response, relying solely on the existence of an alleged dispute of material fact as to whether plaintiff made a claim to Liberty. Dkt. # 62, at 11. "The special relationship [between insured and insurer] creates a nondelegable duty of good faith and fair dealing on the part of the insurer. An insurer's breach of this duty gives rise to a separate cause of action sounding in tort." Wathor, ¶ 6, 87 P.3d at 562 (citations omitted). "[T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." Christian v. Am. Home Assurance Co., 1977 OK 141, ¶ 26, 577 P.2d 899, 905. An insurer bad faith claim has four elements under Oklahoma law:

> (1) [The plaintiff] was covered by the insurance policy and was entitled to recover; (2) the insurer's actions were unreasonable; (3) the insurer failed to deal fairly and act in good faith when handling the claim; and (4) the breach of the duty of good faith and fair dealing was the direct cause of plaintiff's injury.

Roemer v. State Farm Fire & Cas. Co., No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *4 (N.D. Okla. Feb. 14, 2007) (citing Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005)).

Liberty's second asserted basis is sufficient to resolve this claim. Liberty argues that summary judgment is appropriate because plaintiff has failed to show any tortious or unreasonable act on its part. Dkt. # 60, at 7. To show an insurer's bad faith, a plaintiff must prove, inter alia, that "the insurer's actions were unreasonable" and "the insurer failed to deal fairly and act in good faith

18

when handling the claim." Roemer, 2007 WL 527863, at *4. "Using the standard for summary judgment of a bad faith claim, a plaintiff may defeat a motion for judgment as a matter of law by presenting enough evidence so that an 'insurer's conduct may be reasonably perceived as tortious.'" Vining ex rel. Vining v. Enter. Fin. Grp., Inc., 148 F.3d 1206, 1213 (10th Cir. 1998) (quoting Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436-37 (10th Cir. 1993)). Plaintiff presents evidence that "[w]hen [Hendricks] became sick with cancer, we made claims under the policy" and that "we called and tried to get [the claims] paid, through the channels we were directed to." Dkt. # 62-1, at 1.[13] Plaintiff further notes that her "experience with the claims process [at Liberty] was just the opposite [of Liberty's reputation], perhaps because it had been turned over to [Reliable]." Id. For purposes of this motion, the Court will assume that plaintiff's assertions are true and that Liberty "turned [the claims process] over to [Reliable]" for the policies ceded as part of the agreement. See Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). Even so, plaintiff presents no evidence--or even argument--that such an action was unreasonable under the circumstances, nor that in so doing Liberty "failed to deal fairly and act in good faith." The fact that Liberty, who sought to exit the Oklahoma market for cancer treatment insurance in 1984, would use an insurer with direct liability for Oklahoma insurance policies to handle a claim in Oklahoma is not unreasonable. The mere fact that Reliable did not pay plaintiff the full amount that plaintiff sought is not enough to show an unreasonable act under Oklahoma law. See Christian v. Am. Home Assurance Co., 1977 OK 141, ¶ 26, 577 P.2d 899, at 904-05 ("We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount

---

[13]  Liberty strongly disputes this fact, presenting evidence that "neither [Hendricks] nor [plaintiff] ever made a claim for cancer benefits under [the policy]." Dkt. # 60-4, at 2 (affidavit of Chris Voth).

19

of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit."). When a party will bear the burden of proof at trial, the failure to present evidence on an essential element of a claim is fatal on a motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). As plaintiff failed to present any evidence of an essential element of its insurer bad faith claim, the Court grants summary judgment on this claim in favor of Liberty.

**IT IS THEREFORE ORDERED** that defendant Liberty National Life Insurance Company's motion for summary judgment, Dkt. # 60, is hereby **granted in part and denied in part**: it is **granted** as to plaintiff's bad faith claim; it is **denied without prejudice** as to plaintiff's breach of contract claim.

**DATED** this 12th day of November, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE