# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONNA S. EVANS, in her capacity as personal representative of the Estate of Gerald E. Hendricks, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-CV-0390-CVE-PJC |
| LIBERTY NATIONAL LIFE INSURANCE COMPANY, and THE RELIABLE LIFE INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the motion for summary judgment (Dkt. # 69) of defendant The Reliable

Life Insurance Company (Reliable).[1] Pursuant to Fed. R. Civ. P. 56, Reliable seeks summary

judgment as to plaintiff's claims of breach of contract and bad faith, as well as her request for

punitive damages. Reliable argues that, when plaintiff eventually provided the information needed

to adjust the claim, it immediately tendered the appropriate payment. Dkt. # 69, at 1-2. Plaintiff

responds that summary judgment is inappropriate because Reliable has not demonstrated the basis

underlying its adjustment of the claim and because its behavior during the claims process was

malicious and not in good faith. Dkt. # 75, at 15, 23. Reliable has filed a reply. Dkt. # 80. With the

Court's permission, plaintiff has filed a sur-reply. Dkt. # 87.

---

[1]     Defendant Liberty National Life Insurance Company (Liberty) previously filed a motion for summary judgment as to plaintiff's breach of contract and bad faith claims against it. Dkt. # 60. The Court granted the motion as to the bad faith claim and denied it without prejudice as to the breach of contract claim. Dkt. # 64.

# I.

In 1976, Gerald Hendricks purchased a family cancer insurance policy (the policy) from Liberty.[2] Dkt. # 2-2, at 2. Unlike major medical insurance, the policy offered limited coverage and limited benefits. Dkt. # 69-2, at 2; Dkt. # 69-3, at 11-12. In return for a modest monthly premium payment, the policy provided reimbursement directly to the insured for cancer treatment. Dkt. # 69-3, at 11. As Hendricks purchased the policy in 1976, the rates of reimbursement were relatively low. E.g. Dkt. # 69-2, at 3 (providing a benefit of $400 if the insured has surgery to remove brain cancer). The policy contained the following provisions:

- BENEFITS -- Subject to the limitations contained herein, we will pay benefits equal to the expenses incurred while this policy is in force for the hospitalization or treatment for cancer of you or your dependent. The benefits provided by this policy for each person insured hereunder shall be limited to the following specified expenses and shall be subject to the limitations, if any, shown for such specified expenses. Id. at 2.

_____

[2] At numerous points, plaintiff asserts that a particular fact disputes one or more of Reliable's "undisputed material facts." E.g. Dkt. # 75, at 5. However, in many instances the fact plaintiff recites has no connection to what it allegedly disputes. E.g. id. at 6 (arguing that Hendricks's confirmed diagnosis of cancer somehow disputes the fact that Hendricks did not attach an itemized bill to a claim form). Although plaintiff's assertions will be considered in their own right, the Court finds many of Reliable's facts to be undisputed. See FED. R. CIV. P. 56(e). Additionally, several of plaintiff's citations to the record are puzzling. Plaintiff occasionally cites to a record number, without including the relevant exhibit number or page within that exhibit. E.g. Dkt. # 75, at 12 (plaintiff cites to "R000030," which the Court eventually found at Dkt. # 75-2, at 57). Other citations are to exhibits that do not exist in the record. E.g. id. (citing "Defendant Exhibits 26, 27," when Reliable submitted only twenty-one exhibits). The Court finds that, to the extent plaintiff's citations do not allow the Court to locate the relevant evidence, plaintiff has failed to support her assertions. FED. R. CIV. P. 56(c)(1).

- DRUGS AND MEDICINES -- The usual and customary charges for all drugs or medicines prescribed by a licensed physician and used in the treatment of cancer not to include charges for drugs or medicines administered while in a hospital. Id.

- PROOFS OF LOSS -- You must furnish written proof of any expense covered by this policy to us within 90 days after the date of each loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required. Id. at 4.

At some point prior to Hendricks making any claim, Liberty transferred all of its Oklahoma insurance business, including the policy, to Reliable. Dkt. # 69, at 7; Dkt. # 75, at 5. Hendricks made all required premium payments, first to Liberty and then to Reliable, until his death in 2013, and his estate continued to make payments for some months thereafter. Dkt. # 75-1, at 9.

In 2011, Hendricks was diagnosed with skin cancer, and he thereafter made a claim under the policy. Id. at 7. Reliable paid approximately $300 in benefits on that claim. Dkt. # 69-5. In March 2012, Hendricks was again diagnosed with cancer, now lung cancer. Dkt. # 69-3, at 37. Plaintiff received extensive chemotherapy and other treatment, including at least two hospitalizations. See Dkt. # 75-3. In addition to the policy, Hendricks had health insurance through a separate insurer, which had negotiated a lower rate of pay with his medical care providers. See Dkt. # 69-12, at 2; see also Dkt. # 69-3, at 36. Hendricks made claims under his health insurance, and in adjusting the claims his insurer provided him with an explanation of benefits (EOB) for each

claim that detailed what the provider charged, what the health insurance would cover, and what remained for Hendricks to pay. E.g., Dkt. # 75-3, at 1-3.

On April 19, 2012, Hendricks, with the help of Reliable's local agent, submitted a claim form for his lung cancer. Dkt. # 69-6, at 2. The form had two sides but, if the insured had a cancer policy, the reverse side was not to be completed. Id. at 3. Instead, the insured was to "attach [a] pathology report and [an] itemized bill." Id. at 3. Hendricks did not complete the reverse side, but he also did not attach either a pathology report or an itemized bill. Dkt. # 69-3, at 40. Reliable sent Hendricks a letter on May 4, 2012, which stated: "In order to process your claim, we need additional information. Please send us an itemized bill or UB92 billing from the hospital." Dkt. # 69-7, at 2. An identical letter was sent on June 1, 2012. Dkt. # 69-8, at 2. At some point during this period, Hendricks called Reliable for more information about the "UB92 billing," but no one could explain what the form was or how to submit it. Dkt. # 75-10, at 1.

On June 2, 2012, Hendricks filed a request for assistance with the Oklahoma Insurance Department (OID), asking for help in resolving his claim because Reliable was giving him "nothing but a run around." Dkt. # 69-9, at 2. The OID issued an inquiry to Reliable about Hendricks's claim, and on July 5, 2012 Reliable responded by letter that it could not process the claim until it received "an itemized billing from the provider(s) of service indicating the date(s) of service, service(s), and charge for each service." Dkt. # 69-10, at 2. The OID forwarded a copy of Reliable's letter to Hendricks. Dkt. # 69-11, at 2.

On August 22, 2012, Reliable received an itemized bill for care provided from late April to early August 2012. Dkt. # 69-12. The bill showed that Hendricks had another insurer. Id. at 2. As a result, Reliable sent Hendricks another letter on September 5, 2012, which stated: "Because of

your other coverage, your medical expenses may be subject to contractual adjustments, write-offs or other discounts . . . . In order to determine benefits due under your policy with us, we will need a copy of the Explanation of Benefits (EOB) for each date of service and diagnosis." Dkt. # 69-14, at 2. Hendricks requested Reliable's assistance in retrieving this information, and to that end he provided Reliable with permission to seek medical records from his medical providers. Dkt. # 69-15, at 2. However, no medical provider responded to Reliable's requests for information on Hendricks's behalf. Dkt. # 69-3, at 22-23.

In November 2012, Hendricks provided Reliable with a large number of EOBs from his separate insurer. Dkt. # 69-3, at 30. However, these EOBs did not perfectly align with the itemized bill that Hendricks had previously submitted; some EOBs matched charges on the itemized bill, but others were for expenses that Hendricks had not previously submitted. See Dkt. # 75-1, at 20. On December 22, 2012, Reliable sent Hendricks yet another letter, advising that Reliable would need itemized billings for those charges for which he had submitted EOBs. Dkt. # 69-16. Similar letters were sent on January 18, 2013 and February 25, 2013. Dkt. ## 69-18, 69-19. A claims representative from Reliable also spoke with Hendricks by phone during this time to explain what was needed to process the claim. Dkt. # 69-3, at 29. In the February letter, Reliable notified Hendricks that it intended to close his claim, but it would reopen the claim if he submitted the necessary information. Dkt. # 69-18, at 3.

Hendricks filed his petition in Oklahoma state court on March 28, 2013. Dkt. # 2-2, at 2. Reliable removed to this Court. Dkt. # 2. After Hendricks passed away on May 27, 2013, plaintiff, who was appointed personal representative of his estate, was substituted as the named plaintiff. Dkt. ## 20, 22. In December 2014, following the deposition of representatives of Hendricks's medical

care providers, plaintiff submitted a complete set of itemized bills and EOBs to Reliable. Dkt. # 69-3, at 25. On January 6, 2015, Reliable issued a check, payable to Hendricks's estate, for approximately $8,500. Dkt. # 69-21.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Reliable seeks summary judgment as to plaintiff's claim for breach of contract. Dkt. # 69, at 18. Under Oklahoma law, "[a] breach of contract is a material failure of performance of a duty arising under or imposed by agreement." Lewis v. Farmers Ins. Co., 1983 OK 100, ¶ 5, 681 P.2d 67, 69. The three elements of a breach of contract claim are "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843. The parties do not dispute the first or third elements in this motion, focusing entirely on whether Reliable breached the policy. See Dkt. # 69, at 19; Dkt. # 75, at 16.

Insurance policies are contracts and are interpreted in accordance with the general principles of contract law. May v. Mid-Century Ins. Co., 151 P.3d 132, 140 (Okla. 2006). "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context." Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla.1994). "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991); see also OKLA. STAT. tit. 15 § 160. A policy term will be considered ambiguous only if it is susceptible to more than one reasonable interpretation. Max True Plaster Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). A court should not

create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." <u>Wynn v. Avemco Ins. Co.</u>, 963 P.2d 572, 575 (Okla. 1998). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." <u>Am. Economy Ins. Co. v. Bogdahn</u>, 89 P.3d 1051, 1054 (Okla. 2004). "[A]mbiguities are construed most strongly against the insurer . . . ." <u>Max True</u>, 912 P.2d at 865. The interpretation of a contract, and the determination of whether any provision of the contract is ambiguous, are issues of law to be resolved by the Court. <u>Dodson</u>, 812 P.2d at 376.

Reliable argues that summary judgment is warranted because the "policy language is clear and unambiguous" and because it has fulfilled its obligations under the contract by tendering payment of approximately $8,500. Dkt. # 69, at 19. Plaintiff responds that, properly interpreted, the policy requires Reliable to pay significantly more than it has tendered; alternatively, plaintiff argues that the policy is ambiguous. Dkt. # 75, at 16. Implicitly, the parties ask the Court to engage in a two-step analysis: first, to interpret the policy; and second, to determine whether Reliable has fulfilled its obligations under the policy.

A. Interpretation of the Policy

The parties have set forth two provisions of the contract requiring interpretation, which this Court undertakes as a matter of law. <u>See</u> <u>Dodson</u>, 812 P.2d at 376. Under the "Benefits" provision, the policy states that it "will pay benefits equal to the expenses incurred while this police is in force for the hospitalization or treatment for cancer of you or your dependent." Dkt. # 69-2, at 2. It also states that the benefits payable "shall be limited to the following specified expenses and shall be

subject to the limitations, if any, shown for such specified expenses." <u>Id.</u> Under the "Drugs and Medicines" provision, the policy states that it covers "[t]he usual and customary charges for all drugs or medicines prescribed by a licensed physician and used in the treatment of cancer[,] not to include charges for drugs or medicines administered while in a hospital."[3] <u>Id.</u> The parties disagree about whether Reliable must reimburse plaintiff for his "expenses incurred" or the "usual and customary charges" for the drugs used in his treatment.[4] <u>See</u> Dkt. # 69, at 20; Dkt. # 75, at 17. Reliable argues that it is responsible only for the expenses incurred, but it does not address the "Drugs and Medicines" provision. Dkt. # 69, at 20-23. Plaintiff, relying on the "Drugs and Medicines" provision, argues that Reliable must pay the usual and customary charges for the medication that Hendricks received, or alternatively that the two provisions conflict, making the policy ambiguous. Dkt. # 75, at 19-20.

The two provisions do not conflict with one another, contrary to plaintiff's assertions. The "Benefits" provision limits payment to the insured's expenses incurred, with the expenses incurred in turn limited by the remaining provisions of the policy. Dkt. # 69-2, at 2. The "Drugs and Medicines" provision is one such limitation. <u>Id.</u> Under plaintiff's interpretation, the operative language of the "Drugs and Medicines" provision would replace the language of the "Benefits" provision. Such a reading, which would require the Court to ignore the "Benefits" provision entirely,

---

[3]      Reliable does not argue that Hendricks's medications were not prescribed by a licensed physician or that they were administered in a hospital. <u>See</u> Dkt. # 69, at 16.

[4]      Plaintiff also argues that the parties disagree about whether the "Drugs and Medicines" provision covers all drugs, or simply those that kill cancer cells. Dkt. # 75, at 18. Reliable does not address plaintiff's argument in either its motion or reply. <u>See</u> Dkt. # 69, at 18-26; Dkt. # 80, at 2-4. The Court will assume, for purpose of this motion only, that the "Drugs and Medicines" provisions covers all drugs--cancerocidal, palliative, or otherwise-- administered as part of Hendricks's cancer treatment.

is disfavored by Oklahoma law. Lewis, 896 P.2d at 514; see also Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985); OKLA. STAT. tit. 15, § 157. Because the "Drugs and Medicines" provision is a limit to the "Benefits" provision, it would be unnatural to read the policy in a way that would require Reliable to pay more than what is stated in the "Benefits" provision. The better reading is that Reliable must pay the usual and customary charges for drugs and medications, as stated in the "Drugs and Medicines" provision, up to the total amount of expenses incurred, as provided by the "Benefits" provision. In this way, both provisions are given force and effect. Thus, Reliable is ultimately responsible for Hendricks's expenses incurred for drugs and medicines.

The Court must now determine the meaning of "expenses incurred," which the policy does not define. See Dkt. # 69-2. Reliable construes the phrase as "the amount of the medical expense that 'the insured is incurring after the discount from their primary carrier's Explanation of Benefits.'" Dkt. # 69, at 8 (quoting Dkt. # 69-3, at 16). Plaintiff presents no argument that "expenses incurred" should have a different meaning, stating only that "the charges to Plaintiff's decedent in the bills to him are the usual and customary charges for these drugs and medicines. Therefore, these are the expenses incurred."[5] Dkt. # 75, at 19. Oklahoma courts do not appear to have interpreted the phrase "expenses incurred" in this context, although federal district courts interpreting analogous phrases under Oklahoma law have adopted definitions similar to Reliable's. See Woodrich v. Farmers Ins. Co., 405 F. Supp. 2d 1276, 1279 (N.D. Okla. 2004) ("The plain meaning of [reasonable expense] . . . is no more than the provider actually agreed to accept as full payment."); Simon v. Metro. Prop.

---

[5] Plaintiff appears to argue that the phrase "usual and customary charges" should be interpreted to mean the amount charged by Hendricks's medical providers, without regard for any prearranged discount or rate of pay. Dkt. # 75, at 19.

& Cas. Ins. Co., No. CIV-08-1008-W, 2013 WL 150718, at *5 (W.D. Okla. Jan. 14, 2013) (stating

that the phrase "reasonable medical expenses incurred" "reflects the parties' clear intent that [the

insurer] indemnify or reimburse [the insured] only for sums actually paid by him or on his behalf.").

A number of courts in other jurisdictions have found "expenses incurred" to mean the amount

actually paid, as opposed to the amount charged by the care provider. E.g., Metz v. U.S. Life Ins.

Co. in N.Y.C., 662 F.3d 600, 602 (2d Cir. 2011) (applying New York law); Barker v. Wash. Nat.

Ins. Co., C.A. No. 9:12-cv-1901-PMD, 2013 WL 1767620, at *6 (D.S.C. April 24, 2013) (applying

South Carolina law); State Farm Mut. Auto. Ins. Co. v. Bowers, 500 S.E.2d 212, 214 (Va. 1998).

Scholarly treatises are in general agreement. See STEVEN PLITT ET AL., COUCH ON INSURANCE

§158:10 (3d ed. 2014) ("The medical payments provision most commonly requires that the insured

have 'incurred' or 'actually incurred' medical expenses. The clause contemplates a liability thrust

upon the insured by act or operation of law. . . . [E]xpenses are incurred within medical payments

coverage only when one has become obligated to pay for them."); WILLIAM J. SCHERMER & IRVIN

E. SCHERMER, AUTOMOBILE LIABILITY INSURANCE § 56:2 (4th ed. 2014) ("In an action for benefits

under the policy, the amounts which the health provider have [sic] accepted in full payment are

deemed 'incurred,' but not that portion that was 'written off' by the health care providers and not

paid by the insured."). Moreover, one Oklahoma statute clearly intends to prevent an insured from

gaining a windfall by forcing an insurer pay more than what the insured paid. OKLA. STAT. tit. 36,

§ 3651 (defining the "actual charge" or "actual fee" for services as "the amount actually paid by or

on behalf of the insured and accepted by a provider for services provided"); see also Lindley v. Life

Invs. Ins. Co. of Am., Nos. 08-CV-0379-CVE-PJC, 09-CV-0429-CVE-PJC, 2010 WL 723670, at

*5 (N.D. Okla. Feb. 22, 2010). The Court finds these sources persuasive and, for that reason,

interprets the phrase "expenses incurred" as the amount that Hendricks's medical providers agreed to accept from him in full payment of his medical bills. See Woolrich, 405 F. Supp. 2d at 1279 ("The benefit of the bargain provided by [insured's] insurance policy was for [the insurer] to pay what the medical providers actually agreed to charge, not the list price or 'sticker price.'").

Hendricks had other insurance coverage that negotiated a lower rate of payment for his cancer treatment. See Dkt. # 69-12, at 2; see also Dkt. # 69-3, at 36. Plaintiff argues that the collateral source rule should prevent Reliable from benefitting from this lower payment rate. Dkt. # 75, at 19. The collateral source rule, which "traditionally applies in the context of common law tort actions," states that "total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury." Blythe v. Univ. of Okla., 82 P.3d 1021, 1026 (Okla. 2003) (quoting Denco Bus Lines, Inc. v. Hargis, 229 P.2d 560, 564 (Okla. 1951)). The collateral source rule does not apply to this situation. In general, the rule applies to recovery from tortfeasors, and as such its application to a breach of contract claim is suspect. See id. Moreover, the rationale underlying the rule--that "[t]he tortfeasor should not benefit from a policy held and paid for by the injured party"--is inapplicable here. Weatherly v. Flournoy, 929 P.2d 296, 299 (Okla. Civ. App. 1996). As another judge of this Court stated in Woolrich, "[n]either the collateral source rule nor its rationale have any application to [plaintiff's] med pay claim, which is a first party insurance claim." Woolrich, 405 F. Supp. 2d at 1279.

Under the policy, Reliable is liable for the expenses incurred for the treatment of Hendricks's cancer, including drugs and medicines. Although not defined by the policy, the Court interprets the

phrase "expenses incurred" to mean the amount that Hendricks actually paid to satisfy his medical providers.

B. Reliable's Obligations Under the Policy

Whether Reliable has met its obligations under the policy, as interpreted above, remains a question. In its motion for summary judgment, Reliable argues that it tendered the full amount owed on Hendricks's claim when it received the necessary information, and as such there has been no breach of the policy. Dkt. # 69. In response, plaintiff argues that Reliable did not explain why the amount it tendered, approximately $8,500, was the correct amount. Dkt. # 75, at 15-16. Rather, plaintiff contends, the amount tendered was less than one-third of what was owed solely for drugs and medicines,[6] to say nothing of other policy provisions.[7] Id. at 21. In its reply, Reliable included its own EOB, identifying the expenses submitted to it, what portion of those expenses were covered, and any remarks it had in adjusting Hendricks's claim. Dkt. # 80-1. Plaintiff, in her sur-reply, reiterates that Reliable has not shown that the amount tendered meets its obligations, presenting evidence, in the form of itemized bills and insurer EOBs, that additional sums should be paid. See Dkt. # 87, Dkt. # 87-2.

Based on the evidence presented, it is impossible to determine whether Reliable's tendered payment equals Hendricks's expenses incurred. First, neither party provides evidence of the total

---

[6] Plaintiff calculates that, if the discount negotiated by Hendricks's other insurance is applied, Reliable must pay approximately $35,000 for the drugs and medications used in Hendricks's treatment. Dkt. # 75, at 21.

[7] In addition to the fees for drugs and medications, plaintiff seeks $300 for attending physician expenses and $2,680 for hospital admissions. Dkt. # 75, at 17, 23. Reliable did not address these arguments in its reply. Dkt. # 80. As the Court finds that summary judgment should not be granted based on the benefits owed for drugs and medicines, the Court does not address plaintiff's arguments as to these other amounts.

amount that Hendricks or plaintiff actually paid to satisfy Hendricks's medical bills. As detailed above, that is the measure of "expenses incurred." Second, Reliable has provided no explanation for why it adjusted the claim as it did, leaving the Court without the means to determine if Reliable tendered the appropriate amount. For example, Reliable's EOB shows that, on August 28, 2012, Hendricks received chemotherapy treatment; his submitted expenses for that treatment totaled $846. Dkt. # 80-1, at 6. Reliable adjusted the claim to $0, with a remark code indicating that the expense was not covered by the policy. Id. However, despite searching the record, the Court could not find an EOB related to the chemotherapy administered on August 28, much less determine why Reliable would adjust the claim to $0 in light of the "Drugs and Medicines" provision. Without additional information and explanation, the Court cannot find as a matter of law that Reliable has tendered the appropriate amount to satisfy the claim.

In a motion for summary judgment, the burden is on the moving party to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under the policy, Reliable must pay for the "expenses incurred" by Hendricks during his cancer treatment, meaning the amount that Hendricks actually paid to his medical providers. Reliable has tendered payment on Hendricks's claim, and it asserts that the amount tendered is the correct amount. Dkt. # 69, at 26. However, plaintiff disputes the amount tendered as being too low, see Dkt. # 75, at 21, and Reliable has not shown that the amount is correct. Thus, summary judgment on plaintiff's claim for breach of contract is denied.

## IV.

Reliable also seeks summary judgment as to plaintiff's claim that Reliable acted in bad faith in adjusting the insurance claim. Dkt. # 26. "The special relationship [between insured and insurer]

creates a nondelegable duty of good faith and fair dealing on the part of the insurer. An insurer's breach of this duty gives rise to a separate cause of action sounding in tort." Wathor v. Mut. Assurance Adm'rs, Inc., 87 P.3d 559, 562 (Okla. 2004) (citations omitted). "[T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 905 (Okla. 1977). However, Oklahoma courts recognize that there will be "disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." Id. at 904-05; see also Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) ("The insurer does not breach this duty by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"). "An insurer bad faith claim has four elements under Oklahoma law:

> (1) [The plaintiff] was covered by the insurance policy and was entitled to recover; (2) the insurer's actions were unreasonable; (3) the insurer failed to deal fairly and act in good faith when handling the claim; and (4) the breach of the duty of good faith and fair dealing was the direct cause of plaintiff's injury.

Roemer v. State Farm Fire & Cas. Co., No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *4 (N.D. Okla. Feb. 14, 2007) (citing Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005)). "[T]he minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer." Badillo, 121 P.3d at 1094. "Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably

perceived as tortious." <u>Garnett v. Gov't Emps. Ins. Co.</u>, 186 P.3d 935, 944 (Okla. 2008) (citations omitted). Reliable argues that it dealt with Hendricks, and later with plaintiff, in good faith because it had a justifiable reason both to withhold payment until it received all necessary information and to adjust the claim as it did once it received the information. Dkt. # 69, 26-28.

Plaintiff argues that Reliable's repeated requests for additional information show that it was acting unreasonably. Dkt. # 75, at 23-24. The policy states:

> You must furnish written proof of any expense covered by this policy to us within 90 days after the date of each loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Dkt. # 69-2, at 4. The pronoun "you" in the policy refers to the insured. <u>Id.</u> This clearly places the burden of providing information regarding claims on the insured. Hendricks did not attach an itemized bill to his original claim form, as the form requires. Dkt. # 69-6, at 3; <u>see also</u> Dkt. # 69-3, at 40-41. Reliable contacted Hendricks twice by letter, seeking "an itemized bill or UB92 billing" from his hospital.[8] Dkt. # 69-7, at 2; Dkt. # 69-8, at 2. When Hendricks sought assistance from the OID, the response he received was the same: Reliable could not adjust the claim until he provided an itemized bill. Dkt. # 69-10, at 2; Dkt. # 69-11, at 2. From the bill that it eventually received, Reliable concluded that it needed additional information, specifically the EOBs from Hendricks's

---

[8]     Plaintiff faults Reliable for requiring a UB92 billing form, asserting that Hendricks called his medical care providers and that they "did not know what a UB92 billing was." Dkt. # 75, at 11 (citing Dkt. # 75-10, at 1). However, even if those with whom Hendricks spoke did not recognize that form, the phrase is disjunctive. By its terms, Hendricks could have satisfied Reliable's request by providing the itemized billing information, which is what he eventually did. <u>See</u> Dkt. # 69-3, at 34; Dkt. # 75-10, at 1. The fact that Reliable asked for a UB92 billing form as an alternative to an itemized bill does not make Reliable's actions unreasonable.

other insurer, and it contacted Hendricks again for that information. Dkt. # 69-14, at 2; Dkt. # 69-3, at 35. Hendricks submitted a number of EOBs, but many of the EOBs did not match the itemized bill that he had submitted. Dkt. # 75-1, at 20. Thus, Reliable requested additional bills to match the submitted EOBs. Dkt. # 69-16. With Hendricks's permission, Reliable sought the necessary information from his medical providers, Dkt. # 69-15, at 2, although the providers did not respond to its requests. Dkt. # 69-3, at 23. It cannot be unreasonable to require an insured to abide by the terms of the policy and provide information about the claim, as Reliable did here. This is even more true where Reliable allowed Hendricks, and later plaintiff, to continue to submit information well beyond the one-year limit imposed by the policy. Reliable did not act unreasonably when it requested information from Hendricks.

Plaintiff also asserts that Reliable acted unreasonably because it waited until it had a complete set of itemized bills and EOBs to adjust the claim, rather than performing partial adjustments when it obtained any matching bill and EOB. Dkt. # 75, at 24. However, plaintiff does not explain why the failure to make partial adjustments was unreasonable, except to point out that Reliable could have done so and did not. Id. at 24-25. Plaintiff points to no law, and the Court could find none, mandating such action. Moreover, plaintiff points to no evidence that she or Hendricks ever asked Reliable to make partial adjustment. This seems to be the type of "legitimate dispute" about the claim that precludes liability. Thompson, 875 F.2d at 1462. Reliable's decision to wait until it could adjust the entire claim, rather than doing so piecemeal, cannot "be reasonably perceived as tortious." Garnett, 186 P.3d at 944.

Plaintiff argues that Reliable failed in its duty to investigate Hendricks's claim. Dkt. # 75, at 25. The Supreme Court of Oklahoma has said that "[t]o determine the validity of the claim, the

insurer must conduct an investigation reasonably appropriate under the circumstances." <u>Buzzard v. Farmers Ins. Co.</u>, 824 P.2d 1105, 1109 (Okla. 1991). Thus, the duty to investigate is tied to disputes as to the validity of a claim. <u>See</u> <u>Oulds v. Principal Mut. Life Ins. Co.</u>, 6 F.3d 1431, 1442 (10th Cir. 1993) (noting that the manner of an investigation may support a bad faith claim where "the insurer has constructed a sham defense to the claim or has intentionally disregarded undisputed facts supporting the insured's claim"). Here, Reliable does not appear to have contested the validity of Hendricks's claim, <u>see</u> Dkt. # 69-3, at 20-22, 28-30; rather, Reliable waited to adjust the claim until it had the information it needed. Plaintiff argues that, rather than fulfilling its obligation to investigate, Reliable placed the "entire burden of the investigation on Plaintiff and her decedent." Dkt. # 75, at 26. However, as discussed above, the policy placed the burden of providing information on the insured. <u>See</u> Dkt. # 69-2, at 4. Moreover, Reliable did seek additional information from Hendricks's medical providers on his behalf. Dkt. # 69-3, at 22-23. A jury could not find that Reliable's investigation was unreasonable.

Finally, plaintiff takes issue with Reliable's interpretation of the policy's provisions about coverage for medications and its "opaque" determination of the amount due under the policy. Dkt. 3 75, at 25-26. However, as this Court has previously written, "[t]he mere fact that Reliable did not pay plaintiff the full amount that plaintiff sought is not enough to show an unreasonable act under Oklahoma law." Dkt. # 64, at 19 (citing <u>Christian</u>, 577 P.2d at 904-05 ("We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit.")). Likewise, any disagreement regarding the interpretation of the policy as to coverage

18

would not, without more, be unreasonable. Christian, 577 P.2d at 904-05; Pitts v. W. Am. Ins. Co., 212 P.3d 1237, 1241 (Okla. Civ. App. 2009) (citing Hale v. A.G. Ins. Co., 138 P.3d 567, 569 (Okla. Civ. App. 2006)).

Plaintiff argues that her case is stronger that the one made in Tomlinson v. Combined Underwriters Life Insurance Co., 708 F. Supp. 2d 1284, 1296 (N.D. Okla. 2010), where the court denied an insurer's motion for summary judgment on a bad faith claim. The Tomlinson defendant had denied coverage for three medications used in the plaintiff's cancer treatment, as well as a breast prosthesis. Id. at 1287-88. The court based its denial of bad faith summary judgment on the defendant's narrow interpretation of what types of drugs were covered by the policy, its decision to disregard the opinion of the treating oncologist and several provisions of the policy, its ignorance of applicable Oklahoma statutes, and its employees' lack of knowledge regarding the policy. Id. at 1295-96. However, the only similarity between plaintiff's case and Tomlinson is the narrow view of coverage espoused by each insurer. Reliable did not disregard any medical opinion or policy provision, plaintiff identifies no applicable law that Reliable ignored, and Reliable's employees regularly discussed the terms of the policy with Hendricks. See Dkt. # 69-3, at 28-30. Oklahoma courts routinely support summary judgment when there is a "legitimate disagreement" about coverage, as there is here. E.g. Garnett, 186 P.3d at 944; Pitts, 212 P.3d at 1241. This case is plainly distinguishable from Tomlinson.

"Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." Oulds, 6 F.3d at 1437 (citing City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins., 804 P.2d 463, 468 (Okla. Civ. App. 1990)). Plaintiff argues

that the course of action Reliable took throughout the claims process could reasonably be perceived as tortious. However, Reliable's actions either followed the policy or were the result of a legitimate disagreement with plaintiff. The evidence presented could not reasonably be perceived as tortious. Summary judgment is granted in favor of Reliable as to plaintiff's claim for breach of the duty of good faith and fair dealing.

**V.**

Reliable also moves for summary judgment on plaintiff's "claim for punitive damages." Dkt. # 69, at 28. "'[P]unitive damages' are a type of damages-not an underlying claim for relief." Huggins v. Four Seasons Nursing Ctrs., Inc., No. 07-CV-0396-CVE-PJC, 2007 WL 3113429, at *2 (N.D. Okla. Oct. 22, 2007). Thus, summary judgment is inappropriate. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim . . . on which summary judgment is sought.").

Regardless, plaintiff will not be able to recover punitive damages. In order to seek punitive damages, a plaintiff must plead these damages as part of an underlying claim other than the breach of a contract obligation. Z.D. Howard Co. v. Cartwright, 537 P.2d 345, 347 (Okla. 1975) ("As a general rule, damages for breach of contract are limited to the pecuniary loss sustained, and exemplary or punitive damages are not recoverable."); Okla. Stat. tit. 23, § 9.1 ("In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may . . . award punitive damages for the sake of example and by way of punishing the defendant . . . .").

Thus, plaintiff's surviving breach of contract claim cannot serve as the basis for punitive damages.[9] Punitive damages may be sought for an insurer's breach of the duty of good faith. <u>Badillo v. Mid Century Ins. Co.</u>, 121 P.3d 1080, 1106 (Okla. 2005). However, the Court has granted summary judgment in favor of Reliable on plaintiff's claim for breach of the duty of good faith. As plaintiff has no surviving claim that may serve as the basis for punitive damages, she cannot recover punitive damages. <u>Rodebush ex rel. Rodebush v. Okla. Nursing Homes, Ltd.</u>, 867 P.2d 1241, 1247 (Okla. 1993) ("The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages.").

**IT IS THEREFORE ORDERED** that Reliable's motion for summary judgment (Dkt. # 69) is hereby **granted in part** and **denied in part**: it is **granted** as to plaintiff's bad faith claim and request for punitive damages; it is **denied** as to plaintiff's breach of contract claim.

**DATED** this 14th day of April, 2015.

_Claire V Eagle_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[9]    In limited circumstances, Oklahoma courts allow plaintiffs bringing breach of contract claims to recover punitive damages where "the breaching party's acts constitute 'an independent, willful tort.'" <u>Zenith Drilling Corp. v. Internorth, Inc.</u>, 869 F.2d 560, 565 (10th Cir. 1989) (quoting <u>Z.D. Howard Co.</u>, 537 P.2d at 347). However, neither the state court petition, plaintiff's response, nor plaintiff's sur-reply argue that Reliable's breach, if such occurred, was itself tortious. Dkt. # 2-2, at 3; Dkt. # 75, at 23-27; Dkt. # 87.